954 F.2d 787
 293 U.S.App.D.C. 356
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
ICG CONCERNED WORKERS ASSOCIATION, Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents,
IC Industries, Inc., Illinois Central Tran. Company and
Illinois Central Railroad Co., etc., Intervenors.
 Nos. 88-1764, 88-1833, 89-1361, 89-1694, 89-1700.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 14, 1992.
 
 Before BUCKLEY, STEPHEN F. WILLIAMS, and THOMAS,* Circuit Judges
 JUDGMENT
 PER CURIAM
 These cases were heard on the record from the Interstate Commerce Commission and were briefed and argued by counsel. Although the issues presented occasion no need for an opinion, we have accorded them full consideration. See D.C.Cir.R. 14(c). Substantially for reasons adequately stated by the Commission in the rulings on review, and as explained in the accompanying memorandum, it is
 ORDERED AND ADJUDGED by the court that the petitions for review be denied.
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 MEMORANDUM
 ICG Concerned Workers Association ("CWA") and the United Transportation Union ("UTU")** seek review of two decisions of the Interstate Commerce Commission. In the first, the Commission declined to exercise jurisdiction over a transaction through which IC Industries, Inc. ("ICI") divested itself of a railroad it held as a subsidiary. In the second, the Commission approved the issuance of securities by the railroad after it was the subject of a leveraged buy-out. We have consolidated our review of these petitions and affirm both of the Commission's orders.
 I. JURISDICTION OVER THE SPIN-OFF
 In 1971, ICI acquired a controlling interest in Illinois Central Railroad Company ("ICR"). The Interstate Commerce Commission ("Commission") approved that acquisition but required subsequent Commission approval of any sale, pledge, repledge, or other disposition of ICR's stock, any change in its terms, and any issuance of securities by ICI. See Illinois Cent. Gulf R.--Acquisition--G., M. & O., 338 I.C.C. 805, 940 (1971) ("Acquisition Decision"). ICI could seek an exemption from limits on the issuance of securities, and the Commission subsequently narrowed the limit on issuance of securities to those issued by ICI's carrier subsidiary. See IC Industries, Inc.--Modification of Condition, 363 I.C.C. 112, 114 (1980).
 In 1988, ICI filed a Notice of Exemption alerting the Commission that it proposed to divest itself of ICR through a stock distribution to its shareholders. Specifically, ICI proposed to "spin-off" the railroad in a two-step transaction. It would first transfer all of ICR's outstanding stock to another ICC subsidiary, Illinois Central Transportation Company ("ICT"), and then distribute the shares of ICT as a dividend to ICI shareholders. UTU and other interested parties filed a protest to the proposal. They alleged, in part, that the proposed transaction would violate 49 U.S.C. § 11301 (1988), which provides that a carrier may not issue securities or assume obligations related to securities without Commission approval. The Commission investigated the matter and determined that neither section 11301 nor the Acquisition Decision gave it jurisdiction over the transaction.
 The Commission's interpretation of its own governing statute is entitled to deference. See Lamoille Valley R. Co. v. ICC, 711 F.2d 295, 307 (D.C.Cir.1983) ("[W]e must accept the Commission's interpretation if it is sufficiently reasonable.") (internal quotation marks omitted). Here, the Commission found that its
 jurisdiction under section 11301 is limited to issuances of securities by carriers. The 1000 shares of ICR stock were authorized to be issued in [the Commission's decision upholding the initial acquisition of ICR]. The spin-off involves the transfer of ICR stock from ICI to ICT. ... [O]ur jurisdiction does not extend to that transfer.
 IC Industries, Inc.--Securities Notice of Exemption Under 49 CFR 1175, Finance Docket No. 31231 (Sept. 15, 1988) at 6 ("Jurisdiction Decision"). We find the Commission's determinations to be consistent with the statute. Section 11301(b)(1) states that "the Commission has exclusive jurisdiction to approve the issuance of securities by a carrier." 49 U.S.C. § 11301(b)(1). The transfer of ICR's one thousand shares to ICT was not an issuance of securities. The subsequent distribution of ICT's shares to ICI's stockholders involved a holding company rather than a carrier and is arguably not an issuance of a security.
 In Lamoille Valley, 711 F.2d at 329, this court upheld the Commission's determination that section 11301(b)(1) did not grant jurisdiction over the issuance of securities by non-carrier holding companies in a case where an individual created a holding company that bought two railroads. The holding company issued securities to the individual in order to raise the capital for the purchase. We noted that the language of section 11301 did not "inexorably command" the Commission's determination. Id. We added that "[w]e express no view on whether the [Commission] may in some circumstances assert jurisdiction under § 11,301 over a carrier that seeks to avoid ICC regulation of its securities by setting up a holding company." Id. at 330 n. 79.
 Petitioners argue that the Commission should be compelled to assert jurisdiction over the spin-off, pursuant to our Lamoille footnote, because it is part of a sham transaction masking an effort to gut the railroad or to evade review by the Commission. The Commission concluded, however, that the transaction's structure was not a sham, and that conclusion was not arbitrary or capricious. (We assume, as the Commission did, that the distribution of ICT shares was a stock "issuance," though it is not clear why that should be so.) Further, the Commission determined that the railroad would remain viable after the transaction. See Jurisdiction Decision at 8-9. We have no basis to quarrel with this finding. We will set aside a decision of the Commission only if its application of law to the facts of a case is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. See Railway Labor Executives' Ass'n v. ICC, 914 F.2d 276, 280 (D.C.Cir.1990), cert. denied, 111 S.Ct. 1581 (1991). That is not the case here.
 We also agree with the Commission's conclusion that its prior Acquisition Decision does not compel the assertion of jurisdiction. Again, the Commission's interpretation of its own orders controls unless it is "arbitrary or capricious." Chesapeake and Ohio Ry. Co. v. United States, 571 F.2d 1190, 1194 (D.C.Cir.1977). The Acquisition Decision merely made ICI, as the parent company of ICR, subject to the dictates of section 11301. See 338 I.C.C. at 856-57. More specifically, the Commission held that the one thousand shares of ICR stock that were issued at the time of the acquisition could not be "sold, pledged, repledged, or otherwise disposed of by [ICR] unless or until so ordered or approved by [the] Commission." Id. at 940. The Commission found that the Acquisition Decision order applied "should the terms for the 1000 shares of ICR stock be modified (i.e., to increase the number of shares or to restrict the use of that stock). Commission approval would also be required should ICR reacquire its stock and subsequently reissue it." Jurisdiction Decision at 6 (citation omitted). We cannot conclude that this reading of the Commission's prior order is arbitrary or capricious.
 II. THE LEVERAGED BUY-OUT DECISION
 In January 1989, Rail Acquisition, Inc. ("RAI") initiated a successful tender offer for ICT's stock, acquiring over seventy percent of the outstanding shares. RAI's parent company, The Prospect Group, Inc. ("Prospect") proposed to dissolve RAI and ICT, leaving ICR as a wholly owned subsidiary. Prospect also wanted its new subsidiary to issue securities and take on additional debt. ICR filed for an exemption from the need to obtain Commission approval of the issuance of the debt under section 11301. Petitioners again filed protests and requested an investigation. The Commission stayed the exemption and began an examination of the matter. At the Commission's request, ICR provided financial information, including economic analyses of the impact of the new debt. The railroad, however, sought a protective order to limit access to these materials, which the Commission granted.
 CWA and UTU challenged this decision, but the Commission declined to reconsider. The Commission found that petitioners had ample information for their review. Although CWA and UTU filed specific discovery requests, the Commission denied them on the basis that they could advance their challenge without the additional information. The Commission ultimately approved the issuance of the securities and reaffirmed its prior discovery decisions.
 CWA now claims that the Commission erred in allowing ICR to issue securities because ICR would not be viable after incurring the new obligations. We see no basis for striking down the Commission's decision. Under Commission policy, when an investigation of an exemption request is initiated, the Commission applies the standards of 49 U.S.C. § 10505(d), which governs whether an exemption should be revoked and considers whether the issuance may be approved under section 11301(d)(1). See Exemption of Railroads From Securities Regulation under 49 U.S.C. 11301, 1 I.C.C.2d 915, 917-18 (1985). These provisions set forward various factors for the Commission to weigh in determining whether an exemption will harm the public interest. CWA's position is that the exemption should have been revoked and could not meet the requirements of section 11301 because ICR would be left with too great a debt load and inadequate resources with which to meet it.
 We will set aside the Commission's grant of an exemption only if it lacks a rational basis. See CMC Real Estate Corp. v. ICC, 807 F.2d 1025, 1030 (D.C.Cir.1986). "The ICC need only make a showing that 'all relevant factors were considered and that the Commission has articulated a rational connection between the facts as it finds them and the conclusion it premises on those facts.' " Id. (quoting American Trucking Ass'ns, Inc. v. ICC, 656 F.2d 1115, 1127 (5th Cir.1981)). The Commission fully investigated the exemption requested by ICR. It examined a proposed operating plan and projected financial statements to assess the impact of the new debt on ICR. See Notice of Exemption--Issuance of Securities and Assumption of Liabilities--Illinois Central Railroad Company, Finance Docket No. 31468 (Sept. 15, 1989) at 3-11 ("Final Exemption Decision"). The Commission noted that "the new debt will require concerted activity over the near and mid-term if it is to be serviced without incident," id. at 8; but as ICR's submissions reflected conservative assumptions, the Commission concluded that "ICR should be able to accommodate the additional acquisition-related debt." Id. The Commission has fully justified this conclusion, and we will not tamper with it.
 Petitioners also argue that they were denied the ability to participate in the Commission's examination of the exemption because the Commission refused them access to documents necessary to participate in the proceeding. UTU also claims that it was denied the right to communicate its views to the Commission. These contentions are unpersuasive. The Commission specifically held that petitioners could file pleadings and make arguments in the proceeding and offered petitioners the opportunity to view documents if they could make a particularized showing of need. See Notice of Exemption--Issuance of Securities and Assumption of Liabilities--Illinois Central Railroad Company, Finance Docket No. 31468 (June 14, 1989) at 1-2 ("June 14, 1989 Exemption Decision"). As parties, petitioners had access to all non-confidential information. Much of the data included in the confidential materials was generally available. See Final Exemption Decision at 2 and n. 3. Petitioners failed at any time during the proceeding to indicate with sufficient precision what information they sought or why the publicly available information was insufficient. See Trailways Lines, Inc. v. ICC, 766 F.2d 1537, 1546 (D.C.Cir.1985) ("[T]he conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the first instance[.]").
 As to UTU's claim that it was not allowed to participate in the proceedings, the Commission's decision granting a protective order made clear that "CWA and [UTU] are ... parties of record in this proceeding and will receive copies of all decisions and evidentiary filings not protected by this order." Notice of Exemption--Issuance of Securities and Assumption of Liabilities--Illinois Central Railroad Company, Finance Docket No. 31468 (June 5, 1989) at 1 n. 1. The Commission also granted ICR's request for expedited consideration of the matter, ordering that "[r]eplies or motions addressed to any pleading in this investigation must be filed within 10 days after the pleading is filed with the Commission." Id. at 2. Further, the June 14, 1989 Exemption Decision specifically stated that "[i]nterested parties, including [UTU] are not precluded from participating fully. They may file pleadings and argument.... " Id. at 1. These procedures for participation comport with Commission regulations. See 49 C.F.R. Part 1112 (1990). UTU had access to all non-confidential information, yet it made no substantive comments. Nothing in the Commission's procedures barred UTU from introducing evidence. The Commission cannot be held accountable for the failure of a party to take advantage of its position and put comments and evidence into the record.
 III. CONCLUSION
 For the reasons set out here and in the Commission's rulings, the petitions for review are
 
 
 1
 Denied.
 
 
 
 *
 Former Circuit Judge THOMAS, now an Associate Justice of the Supreme Court of the United States, was a member of the panel when the case was argued but did not participate in this decision
 
 
 **
 Patrick Simmons clearly lacks standing to sue in his individual capacity. We will replace his name with that of the United Transportation Union. See United Transp. Union v. ICC, 891 F.2d 908, 909 n. 1 (D.C.Cir.1989), cert. denied, 110 S.Ct. 3271 (1990)